Citation Nr: 1829727 
Decision Date: 07/18/18 Archive Date: 07/24/18

DOCKET NO. 07-29 271 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

1. Entitlement to service connection for a back disability.

2. Entitlement to service connection for a psychiatric disability, to include as secondary to a back disability.


REPRESENTATION

Appellant represented by: James G. Fausone, Attorney


ATTORNEY FOR THE BOARD

D. Ware, Associate Counsel




INTRODUCTION

The Veteran had active military service from October 1972 to November 1976. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from September 2006 and August 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

In July 2010, the Board denied entitlement to service connection for a back disability. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In an April 2011 Order, the Court granted a Joint Motion of the parties and remanded the case to the Board for action consistent with the Joint Motion. In August 2011, August 2012, November 2014, and September 2017, the Board remanded the case for additional development. The case has now been returned to the Board for further appellate action.

The issue of entitlement to service connection for a psychiatric disability is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran has a current back disability, diagnosed as lumbar spine degenerative joint disease (DJD) and disc disease (DDD), which is presumed to be etiologically related to his active service.


CONCLUSION OF LAW

The Veteran's back disability was incurred in active service. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1131 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).



REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran has asserted that symptoms related to his back disability originated in, and have persisted since service. Specifically, he has stated that lifting "hundreds upon hundreds" of heavy artillery bombs caused his currently present back disability. He has contended that he has scoliosis, but that it did not exist prior to service. 

Service treatment records (STRs) document complaints of and treatment for scoliosis, low back pain/strain, and muscle spasms/tenderness while the Veteran was in active service. Although the Veteran's October 1972 enlistment examination showed that the Veteran's spine and musculoskeletal system were normal, the Veteran's November 1976 separation examination noted that the Veteran had mild thoracic scoliosis that existed prior to the Veteran's entrance into service. Additionally, a February 1983 examination indicated that the Veteran's spine and musculoskeletal system were normal prior to his enlistment into the Army National Guard.

A review of post-service treatment records shows that the Veteran was first treated for low back pain and scoliosis in January 1995. A private chiropractor subsequently diagnosed the Veteran with mild scoliosis of the upper dorsal spine.

The Veteran was afforded a VA examination in September 2006. He reported that not only did he have back problems during service but he experienced chest wall and rib cage pain due to his scoliosis. The Veteran's physician determined that the Veteran's longstanding complaints of chest wall and rib cage pain were noncardiac in origin. X-ray results noted that there was no evidence of scoliosis. The Veteran, however, was diagnosed with thoracolumbar strain with minimal degenerative changes. 

Pursuant to an April 2009 Board remand, the Veteran was provided an additional VA examination in September 2009. X-ray results revealed degenerative disc disease and degenerative facet disease with no appreciable scoliosis. The Veteran was diagnosed with a lumbar spine disability, myofascial strain/lumbago that had resolved without residuals, and degenerative joint disease (DJD) and degenerative disc disease (DDD) of the lumbar spine. The examiner determined that the Veteran's myofascial strain/lumbago was an entirely different entity than his DDD and DJD. The examiner noted that the Veteran was only treated a few times for low back pain related to myofascial strain/lumbago and there was no chronicity or continuity of care. Therefore, the examiner concluded that the Veteran's DJD or DDD was not caused by or a result of the Veteran's myofascial strain/lumbago or military service. The examiner stated that the preponderance of the medical evidence did not support acute, recurrent, and/or chronic myofascial strain as a proximate cause of the Veteran's DJD or DDD. The examiner determined that the Veteran's symptoms were predominantly related to the Veteran's DJD or DDD.

In February 2009, however, the Veteran's private physician observed that the Veteran had some minimal curvature to the right at T1-L1. X-rays of the thoracic and lumbar regions showed some very mild DJD and mild curvature at L5 and at T12-L1. He diagnosed the Veteran with mild scoliosis without any degenerative changes.

Pursuant to an August 2011 Board remand, the Veteran was provided an additional VA examination in November 2011. The examiner opined that the Veteran's back disability clearly and unmistakably existed prior to service, but was not aggravated beyond its natural progression due the Veteran's service. He found that X-ray results revealed no evidence of scoliosis. Moreover, he stated that there was no evidence of scoliosis in the past. Additionally, the examiner opined that the Veteran's back disability was less likely than not incurred in or caused by service. He determined that the Veteran's lumbar spine was within normal limits and that there was no objective evidence to sustain a diagnosis. Based on a review of the medical literature, he stated that any changes in X-ray were minimal and consistent with natural aging rather than a medical condition. He concluded that the Veteran's back pain was more likely secondary to bad posture as a result of prolonged sitting considering the Veteran's occupation as a truck driver and increased BMI.

In August 2013, an addendum VA medical opinion was obtained in accordance with an August 2012 Board remand. The examiner stated that there was insufficient evidence to warrant or confirm a diagnosis of an acute or chronic scoliosis or its residuals. Additionally, the examiner could not render a medical opinion because no condition was diagnosed. He confirmed that VA 2009 and 2011 X-rays demonstrated that no scoliosis was present. Moreover, he stated that there was no objective evidence to support that the Veteran's thoracolumbar strain (diagnosed in 2006) or the Veteran's DJD and DDD (diagnosed in 2009) existed prior to service. Therefore, the examiner concluded that it was highly unlikely, despite giving the Veteran full credibility, that the Veteran's currently present back disability had its onset during active duty or a year following service. 

An additional VA medical opinion was obtained in June 2016, pursuant to a November 2014 Board remand. X-ray results showed mild spondylosis; however, there was no evidence of scoliosis. The examiner also noted that it was "interesting" that the medical documentation differed in diagnosing scoliosis in either the lumbar or thoracic regions. Ultimately, the examiner diagnosed the Veteran with spondylosis without myelopathy. He noted that VA X-rays in 2006 revealed changes consistent with early spondylosis, VA X-rays in 2009 showed mild spondylosis, and VA X-rays in 2011 were evident of lumbar spondylosis and a normal thoracic spine with no evidence of scoliosis. He determined that there was no objective evidence to support that the Veteran's back disability preexisted service and was aggravated by service. As per current medical literature, the examiner stated that the Veteran's back disability was the inevitable consequence of aging. He added that everyone with chronic or recurrent back pain had a first episode of back pain and it did not necessarily make the initial episode(s) related to the later chronic condition. He stated that while back sprain or strain involved the muscles and ligaments of the spinal region, spondylosis was a degenerative process involving the discs and vertebral bodies, and one was not the cause of, or correlated to the other. However, he stated that individuals often remember an episode "where it all began," despite the lack of a medical nexus. 

In February 2018, an additional VA medical opinion was obtained in accordance with a September 2017 Board remand. The examiner determined that there was no clear and unmistakable evidence that the Veteran's back disability, to include scoliosis, thoracolumbar strain, lumbar spine DJD, and lumbar spine DDD pre-existed service. She noted that the Veteran's October 1972 enlistment examination was silent for a back condition or any residuals. With regard to the Veteran's in-service diagnosis for lumbar strain/lumbago, she stated that it immediately resolved without residuals. She also noted that post-service medical records and Army National Guard enlistment examination were silent for lumbar strain/lumbago and/or residuals. With regard to the Veteran's diagnosis for lumbar spine DJD and DDD, she concluded that it did not have its onset during service, nor was it manifested in the first post-service year, and was not otherwise etiologically related to the Veteran's service. She noted that the Veteran's STRs and post-service treatment records were silent for lumbar spine DJD and DDD. She stated that the Veteran acquired lumbar spine DJD and DDD 30-33 years post-service and agreed with the November 2011 and June 2016 VA examiner's age- and BMI-related rationale. Additionally, she concluded that there was insufficient evidence to warrant or confirm a diagnosis of acute or chronic thoracolumbar scoliosis or its residuals. She noted that there were variable reports regarding the presence and absence of scoliosis throughout the Veteran's STRs and post-service treatment records. However, she stated that the vast majority of radiologic findings from 2006 to 2016 showed no objective or conclusive evidence of scoliosis. Thus, she could not render a medical opinion on an undiagnosed condition or comment on prior radiologic reports without resorting to mere speculation. 

As an initial matter, the Board finds that the VA medical opinions and other medical evidence of record do not clearly and unmistakably establish that the Veteran's scoliosis or back disability preexisted service. Therefore, the presumption of soundness at service entrance has not been rebutted. 38 U.S.C. § 1111. Additionally, the Veteran has reported that he first experienced symptoms associated with his back disability while he was in active service and that those symptoms have continued since service. Heuer v. Brown, 7 Vet. App. 379 (1995); Falzone v. Brown, 8 Vet. App. 398 (1995); Caldwell v. Derwinski, 1 Vet. App. 466 (1991). Moreover, the Board finds the Veteran to be credible in that respect. 

The Board acknowledges that the VA medical opinions of record weigh against the Veteran's claim that his back disability is related to service; however, the Board finds the VA medical opinions to be inadequate for VA adjudication purposes. In this regard, the VA examiners do not appear to have taken into account the Veteran's report of continual back problems since service as well as the potential mechanism of injury of lifting heavy artillery bombs. Hence, the Board finds the opinions are of limited probative value and as such, they cannot serve as the basis of a denial of entitlement to service connection. 

The Board notes that for certain chronic diseases, set forth in 38 C.F.R. § 3.309 (a), such as arthritis, continuity of symptoms is required when the condition noted in service is not shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. §§ 3.303 (b), 3.309(a) (2017); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Here, the Veteran has competently identified back pain while in service and reported that his symptoms began in service and have continued since that time, and those statements have been found credible by the Board. While he is not competent to establish a diagnosis of arthritis, as that requires medical imaging and medical expertise, his statements of continuity of symptoms are sufficient to establish a link between his current diagnosis of lumbar spine DJD (or arthritis) and his in-service back pain. Arthritis is a chronic disease, and the Veteran has competently and credibly attested to the continuity of symptomatology of back pain, which was first noted in service and later diagnosed as DJD (or arthritis) and DDD of the lumbar spine. Moreover, as noted above, while there are VA medical opinions of record indicating that the Veteran's currently diagnosed back disability is not related to his active service, those opinions are not adequate. 

Accordingly, the Board finds that the evidence for and against the claim is at least in equipoise. Therefore, the benefit of the doubt must be resolved in favor of the Veteran and entitlement to service connection for a back disability is warranted. 38 U.S.C. § 5107 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Entitlement to service connection for a back disability is granted.
REMAND

Regrettably, the Board finds that additional development is required before the remaining claim on appeal is decided. 

The Veteran has contended that he has a psychiatric disability (claimed as depression) that is secondarily-related to his service-connected back disability, granted herein. 

STRs document symptoms of anxiety and frustration. Specifically, the Veteran complained of anxiety associated with the Veteran's treatment for scoliosis in August 1974 and requested treatment for anxiety and frustration in October 1975. 

A review of private post-service treatment records report a history of depression. 

In August 2013, the Veteran was afforded a VA psychiatric examination. The Veteran related that he began smoking marijuana for mental health issues during service. He reported that he was stressed due to his back problems and smoking marijuana relaxed him. He recalled that his service medical provider advised him to talk to someone. He stated that his commander knew that he could not perform heavy lifting but continued to pressure the Veteran. The Veteran related that since separating from service, he continued to smoke marijuana for his back problems until he had to stop due to work restrictions. Thereafter, the Veteran reported that he began to have issues with anxiety because he was no longer smoking marijuana. The Veteran stated that he had taken prescription medication for his anxiety for approximately 20 years. The Veteran's cannabis use disorder had been currently in full remission. The examiner opined that the Veteran's psychiatric disability (diagnosed as anxiety disorder and depressive disorder) was less likely than not caused by or a result of an in-service illness. In support of this opinion, the examiner stated that the Veteran's reported psychiatric issues and treatment began well after separation from service and that the Veteran attributed his problems to cessation of daily cannabis use. The examiner noted that the Veteran also stated that he had continued to use alcohol daily with his psychiatric medications, which were prescribed well after separation from service. Additionally, the Veteran indicated that he had increasing economic problems over the past three years that reportedly impacted his condition. 

In June 2016, an addendum VA medical opinion was obtained in accordance with a November 2014 Board remand. The examiner could not determine the etiological relationship, if any, between the Veteran's psychiatric diagnoses without resort to mere speculation.

Pursuant to a September 2017 Board remand, an additional VA medical opinion was obtained in February 2018. The examiner opined that the Veteran's psychiatric disability was less likely as not etiologically related to his military service or caused or aggravated by his back disability. In support of this opinion, the examiner stated that cannabis was a substance that caused both depression and anxiety, among other side effects. Additionally, the February 2018 examiner concurred with the rationale provided by the August 2013 VA examiner, and thus it is incorporated herein.

The Board finds that the development conducted does not adequately comply with the directives of the November 2014 and September 2017 remands directing the examiner to consider the Veteran's in-service complaints of anxiety and the Veteran's lay assertions proffered at the August 2013 VA examination, demonstrating a continuity of psychiatric symptomatology. Compliance with a remand is not discretionary, and failure to comply with the terms of a remand necessitates remand for corrective action. Stegall v. West, 11 Vet. App. 268 (1998). Therefore, a new VA medical opinion should be obtained to determine the nature and etiology of any currently present psychiatric disability. 

Additionally, current treatment records should be identified and obtained before a decision is made in this case.

Accordingly, the case is REMANDED for the following action:

1. Identify and obtain any pertinent, outstanding VA and private treatment records and associate them with the claims file. 

2. Then, return the claims file to the VA Medical Center for an addendum opinion. The claims file must be made available to, and reviewed by the examiner. 

Based on a review of the record, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present psychiatric disability is etiologically related to the Veteran's active service, to specifically include his lay assertions that he began smoking marijuana for mental health issues during service, he was stressed due to his back problems and he smoke marijuana to alleviate it, and his commander pressured him to perform heavy lifting during service. The examiner should presume that the Veteran is a reliable historian with regard to his report of onset and continuity of his psychiatric symptoms.

The examiner should also provide an opinion as to whether it is at least as likely as not (50 percent or better probability) that any currently present psychiatric disability was caused or chronically worsened by the Veteran's service-connected back disability, to specifically include his lay assertion that he was stressed due to his back problems and he smoke marijuana to alleviate it. 

Another VA examination of the Veteran should only be performed if determined necessary by the examiner providing the requested opinions. 

The rationale for all opinions expressed must be provided. 

3. Confirm that the VA examination report and all medical opinions provided comport with this remand and undertake any other development determined to be warranted.

4. Then, readjudicate the remaining claim on appeal. If the decision remains adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
Kristin Haddock
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs